## UNITED STATES v. BRIGGS MFG. CO.
### No. 294.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

426

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the United States.

Richard W. Hale and David Burstein, both of Boston, Mass., for Briggs Mfg. Co.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This action is to recover income and profit taxes alleged to have been illegally collected for the year 1918. The basis of the action is a claim of erroneous computation by the Commissioner of Internal Revenue in deducting from gross income allowable on account of amortization the cost of certain facilities claimed to have been constructed for the production of war materials within section 234 (a) and (8) of the 1918 Revenue Act (40 Stat. 1077). Judgment was entered for the appellee for $9,655.27. Appellee is a Connecticut corporation having a manufacturing plant engaged, in 1918, in manufacturing cotton yarns, tire fabrics, and tent duck. Part of its products consisted of articles contributing to the prosecution of the war.

There are twenty-one items with respect to which the appellee claimed deduction from gross income on account of amortization of the cost. All of the items, except a war warp compresser, were used in the plant during the period following the war and until March, 1924. The warp compresser was abandoned at the close of the war, and was found to have a market value of $30. Among the items scheduled was one of tenement houses for employees, repair to a furnace, a garage built for fire engine, an icehouse, improvements on a dam, roof on a boiler house, and a water tank for a mill, all of which were claimed to have been used less during the post-war period than during 1918. The other items were used in the operation of the plant as a whole after the war period. During 1918, the plant was in operation and employed an average of 217; in 1921, an average of 180; in 1922, an average of 178; in 1923, an average of 178; and, in 1924, an average of 178. The hours of plant operation were as follows: 1918, 2,770; 1919, 2,-797; 1920, 2,465; 1921, 2,023; 1922, 1,982; 1923, 2,134; 1924, 1,514. The production, expressed in pounds, during the same period, was 1,469,449 in 1918; 1,708,394 in 1919; 1,313,336 in 1920; 600,794 in 1921; 571,584 in 1922; 631,681 in 1923; 440,693 in 1924. The working hours per week in 1918 were 55, but, as a result of a strike in 1919, in the succeeding years, it was reduced to 48 hours.

The statute provides (section 234(a), 40 Stat. 1077):

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, * * * there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities * * * as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income."

Section 1309 of the same act (40 Stat. 1143) authorizes the Commissioner to make all needful rules and regulations for the enforcement of the foregoing provisions. This the Commissioner did. As to war facilities abandoned during the post-war period, he ruled that the salvage value, if any, be deducted from the cost in ascertaining the amortization. In the case of the warp compresser, item 2, he found the cost to be $1,733.70 and the salvage value $30. The government concedes that the amortization allowance on this item should be $1,703.70 representing the difference between the original cost and the residual post-war value, less amounts already allowed for depreciation.

The regulations further provide, in substance, that, for war facilities sold during the post-war period, the residual post-war value was the difference between the cost of such facilities and the selling price thereof, with adjustment for depreciation. For war facilities continued in use during the post-war period, the residual value should be ascertained by finding the original cost and deducting therefrom what is the post-war residual value of each item to the taxpayer. But it must be found that each item was acquired for the production of war materials within the purview of the statute. The deduction allowable under the statute in respect to these facilities may be difficult to compute in order to ascertain their post-war residual value independently from the operation of the entire plant. But, in ascertaining that value, it should be computed as an estimated value of the facilities in terms of the actual use in the manufacturing plant of the appellee. This is not an arbitrary classification. The utility of the object is its value. Bouvier's Law Dictionary. Such property may have a value in use as well as an exchangeable value, and, where it is continued in use in the manufacturing plant, its fair and reasonable value for that purpose represents its residual value, and should and can be fixed as the value in use to the taxpayer, rather

than the value which a stranger might place upon the facility. Such value may be measured in terms of production; the facility is valuable to the manufacturing plant because it aids in production. One machine may be more valuable than another because production may be increased through its use. With this knowledge and from the experience of manufacturers, the Commissioner argues that a comparison of the production during the post-war period with the production attained through the use of the facilities during the war period and a comparison of the labor conditions in the taxpayer's plant during these periods are factors which should be considered. This information and data were supplied by this taxpayer. A tabulation set out in the government's exhibits indicates the percentage of reduction of labor employed from 1918 to the end of the post-war period as nearly as great as the percentage of reduction in pounds of materials manufactured. This is accounted for in part by the fact that the manufacture of heavier materials, such as tire fabric and tent duck, was abandoned during the post-war period, and the appellee manufactured the lighter fabrics and continued throughout the post-war period. More labor to the pound was required. The Commissioner considered both the quantity of production and the amount of labor required in the manufacturing process in computing the post-war value in use. In his calculations, he found, in 1923, the operators for the man hours of labor were 74 per cent. of 1918, and, considering the reduction in hours of labor and the number of pounds produced, the 1923 production was 49 per cent. of that of 1918, thus, taking the average of 74 per cent. of man hours and 49 per cent. of pounds produced, he found 61 per cent. as the percentage in the post-war use. From this he found 61 per cent. of the cost of thirteen items which he allowed as residual facilities in the post-war period, and the result he found to be a fair residual post-war value to be allowed in computing amortization. The difference between this residual value as determined and the cost was a reasonable allowance on account of amortization of the cost of these items. This calculation resulted in the conclusion by the Commissioner of an amount not less than the sale or salvage value of the facilities and not greater than the cost of the replacement. The cost of the items was $18,383.29; 61 per cent. of which is $11,213.81, which the Commissioner found to be the fair residual value. This, deducted from the cost, gives the amount of amortization of the cost on these

items of $7,169.28. This method of calculation has been adopted by the Commissioner and approved by the Board of Tax Appeals for a period of over ten years. Appeal of Manville Jenckes Company, 4 B. T. A. 765; Nun, Bush & Weldon Shoe Co., 15 B. T. A. 918; Standard Refractories Company, 6 B. T. A. 24. See, also, Elliott v. United States (D. C.) 16 F.(2d) 164. We find no reason to differ from these conclusions.

■ There were other items which we think should have been disallowed as residual facilities. The item for tenement houses as charged during the post-war period. Appellee increased its employees' houses from 70 in 1918 to 79 in 1924. The percentage of vacancies decreased during that period, and the appellee derived more income from rentals in each year of the post-war period than in the 1918 period. A furnace in the head weaver's house constitutes another item. This furnace was employed to the same extent in the post-war period as in previous years and as a facility was indispensable then. The claim is that it was too large, but it was just as necessary during the post-war period as in the previous years. Another item, a garage for fire engine, is listed. It was acquired during the latter part of 1918 for the purpose of housing a new fire engine and three automobiles. It was used in the post-war period for housing the fire engine and the three automobiles. An item for icehouse for storing ice each year was used in the post-war period as in the previous years. Its use was not decreased during this period. It was acquired after the cessation of hostilities, but was not acquired for the production of war materials. There were improvements to a dam used for the protection of the entire plant during the flood seasons of 1919 and subsequent years. The improvements afforded drainage for the cellars and tenement houses, but it was used as much in the post-war period because of the use of the tenement houses as during the previous period. A new roof replaced the old upon the boiler house. It had given way during the war period; it was a permanent improvement to the plant for use during subsequent years. A new water tank was built for mill No. 4. It was used to replace an old tank for fire protection. This was built without regard to war work. These seven items had a residual value as great as the cost, and no loss was sustained by reason of such improvements. The deductions for these seven items should have been disallowed.

■ The provisions of the statute justified the Department in the regulations which were made. The Commissioner's conclusions were justified within the regulations and the statutes. The discretion vested in the Commissioner was not abused. Section 1309, 1918 Revenue Act; Brewster v. Gage, 50 S. Ct. 115, 74 L. Ed. ——, Jan. 6, 1930; Logan v. Davis, 233 U. S. 623, 34 S. Ct. 685, 58 L. Ed. 1121; Boske v. Comingore, 177 U. S. 459, 20 S. Ct. 701, 44 L. Ed. 846. The regulations were reasonably adapted to accomplish the purpose of the statute, and they have the force and effect of law. United States v. Anderson, 269 U. S. 423, 46 S. Ct. 131, 70 L. Ed. 347; Rouss v. Bowers (C. C. A.) 30 F.(2d) 628.

■ It is apparent that the machinery necessary to the appellee's plant continuing manufacturing, as it did, during the post-war period, would have had to be replaced with similar facilities if it had salvaged or sold the machinery as scrap iron or second hand. The statute and the regulations made thereunder provided for the deductions for amortizations where machinery has been actually sold or abandoned by a taxpayer at the close of the post-war period, but they have no application where facilities have been continued in use, nor does the statute have application to items other than those actually in use as facilities in the making of materials during the war period. The whole cost of facilities used during the war period may not be charged against the war income, but a part of such cost may be charged against such income when it is shown there has been a partial loss during the post-war period, even though they have been used during the latter period. Congress did not intend that the loss should be charged off as salvage or scrap iron and the taxpayer continue to have a considerable use thereof. We agree with the Commissioner's calculations and resulting amortization.

The judgment below is reversed, and a decree will be entered accordingly.

L. HAND, Circuit Judge, concurs in the result.