## STANDARD REFRACTORIES CO. v. UNITED STATES.

### No. K–61.

Court of Claims.

Feb. 8, 1937.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and Roswell Magill, both of New York City, Chester J. McGuire, of Washington, D. C., and James O. Wynn, of New York City, on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

Plaintiff sues to recover the amount of an additional assessment of income and profits taxes for the year 1918 of $104,516.78, resulting from the disallowance by the Commissioner of Internal Revenue of a deduction claimed by plaintiff in its income tax return for that year for the amortization of war facilities pursuant to section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1077), the relevant portions of which read:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income."

At the time the foregoing section was incorporated in the Revenue Act of 1918 (passed in February, 1919), it was recognized that many taxpayers had made large expenditures for additions to plants and equipment to be used in producing war materials, and that many of these increased facilities would not be required for postwar production. It was further recognized that existing law for the ordinary wear and tear in the use of the facilities was not so worded as to permit an adequate deduction for the great loss in useful value at the end of the war of facilities thus constructed to meet the abnormal war demands. The Ways and Means Committee of the House of Representatives, in reporting the 1918 act to the House, stated:

"(4) Due to the necessity for erecting buildings and building machinery for war purposes many buildings and much machinery have been erected that will be of little value after the war. Under existing law it is impossible for the Treasury Department to allow deductions other than for the ordinary exhaustion, wear and tear, and depletion of such property. A provision is incorporated in this bill to allow the Treasury Department in such cases to allow special amounts for amortization, according to the peculiar condition in each case, but such amounts cannot exceed in any year 25 per cent of the net income. At any time within three years the allowance may be re-examined, and if found incorrect the taxes will be readjusted, and any overpayment refunded, or any underpayment collected from the taxpayer."

The conditions precedent to a taxpayer's right to a reasonable amortization deduction are: (1) That he must have constructed, erected, installed, or acquired on or after April 6, 1917, buildings, machinery, equipment, or other facilities; and (2) that such buildings, machinery, equipment, or other facilities must have been constructed, erected, installed, or acquired for the production of articles contributing to the prosecution of the war. These conditions precedent have been fully established. The facts disclose that silica brick

manufactured and sold by plaintiff was an article used in the prosecution of the war, and that subsequent to April 6, 1917, plaintiff erected and installed additional plant equipment and facilities to meet the war demand for its product as follows:

| | |
|---|---|
| Plant and equipment | $354,781.12 |
| Tenements | 139,014.56 |
| | 493,795.68 |

The facts further disclose that plaintiff's pre-war facilities were more than adequate to meet the post-war production requirements and that the wartime additions to its plant and equipment were used only to a limited extent after the war, the added facilities merely duplicating existing equipment and embodying no improvements except in the case of the power plant.

■■ The courts have laid down the rule that where wartime facilities are used in a taxpayer's post-war business the reasonable amortization deduction provided in the law is the difference between the depreciated wartime cost of such facilities and their value as determined by their actual post-war use in the business. Ashland Iron & Mining Co. v. United States, 56 F.(2d) 466, 74 Ct.Cl. 172; United States v. Briggs Mfg. Co. (C.C.A. 2) 40 F.(2d) 425; Diamond Alkali Co. v. Heiner (C.C.A.) 60 F.(2d) 505. It appears in this case that the average wartime production of plaintiff's plant was 2,098,772 bricks per month, and that the average post-war production a month was 1,235,819 bricks, or 58.5 per cent. of the wartime production. On this basis of comparison, which the courts hold to be a reasonable method of computation, the loss of useful value of plaintiff's wartime additional plant equipment and facilities was 41.2 per cent. of their wartime depreciated cost, $452,675.70. This percentage is less favorable to plaintiff than the law requires when it is considered that the maximum post-war production for no given month equalled the maximum pre-war production, indicating beyond question that the pre-war plant was sufficient for plaintiff's post-war production. Since the salvage value, outside of the tenement houses, was practically nothing, plaintiff might reasonably be held to be entitled to an amortization allowance in substantially the full amount of the wartime costs of the additional equipment and facilities, other than the cost of the tenement houses. However this may be, there can be no doubt that plaintiff's loss in the useful value of its additional war equipment and facilities was at least 41.2 per cent. of their cost, and that it was entitled to an amortization deduction for the year 1918 based on this percentage.

■ The defendant in its brief does not seriously controvert the correctness of the conclusion just stated, but contends that plaintiff through the sale of its plant and equipment in 1922 more than recaptured its entire wartime costs of the additional equipment and facilities and for that reason is not entitled to the amortization deduction provided, and cites in support of its contention Appeal of Walcott Lathe Co., 2 B.T.A. 1231, Interlake Iron Corporation v. Com'r, 25 B.T.A. 637, Pierce Oil Corporation v. Com'r, 32 B.T.A. 403, and other cases. These cases lay down the rule that where it is shown that a taxpayer has disposed of particular wartime facilities at a price equal to or in excess of their wartime cost, no need for the application of the amortization provision of the statute exists and an amortization deduction may not be allowed. There can be no question as to the correctness of this rule, as it is evident that where a taxpayer has disposed of wartime equipment and facilities for more than their cost he suffered no loss from his expenditures in acquiring or constructing them.

■ The facts in the cases cited by the defendant and the facts of the instant case are clearly distinguishable. In each of the cited cases the taxpayer had sold the particular wartime facilities sought to be amortized for an amount equal to or in excess of their cost. In this case plaintiff, the taxpayer, did not sell the particular facilities sought to be amortized. It is true that during the year 1922 the General Refractories Company, also engaged in the manufacture and sale of silica brick, purchased from plaintiff's stockholders all the common and preferred stock of plaintiff and thereby became its sole stockholder, and that in 1923 the General Refractories company, by bill of sale, took over all the assets and business of plaintiff, including the wartime facilities, and thereafter dissolved the company. The defendant says that the acquisition of plaintiff's stock by the General Refractories Company in 1922 and its subsequent assumption of the assets of plaintiff in 1923 under the

bill of sale constituted but parts of a single transaction, the purpose of which on the plaintiff's part was to dispose of its plant, and that the effect of the whole transaction was the sale by plaintiff of its assets, including the wartime facilities involved, to the General Refractories Company at a price which defendant contends was in excess of their wartime costs. We do not agree with the defendant that the individual sales of their stock by plaintiff's stockholders, under the circumstances stated, can be construed as a sale by plaintiff of either its stock or its assets; but even conceding that such was the case, there is nothing in the record on which a finding can be made as to what part of the purchase price of the stock represented the value of plant equipment and facilities as distinguished from the value of other assets of the company, and this is particularly true as to the wartime facilities sought to be amortized. The facts show that the General Refractories Company had ample facilities for its then and prospective production demands, but that it had an inadequate supply of ganister rock used in the production of silica firebrick. In 1922 it was negotiating a very large contract with the United States Steel Corporation and that company insisted that the General Refractories Company obtain a sufficient supply of ganister rock to insure performance of the contract. Plaintiff had, immediately adjacent to its plant, what seemed to be an almost inexhaustible supply of ganister rock of a superior quality. It is quite clear that the main purpose of the General Refractories Company in acquiring the stock of plaintiff was to obtain control of this immense supply of ganister. It had no immediate need in its business for other assets of plaintiff. No appraisal of the assets is shown to have been made prior to the acquisition of the stock by the General Refractories Company and it is not possible to determine the relative value of plaintiff's various assets, but the record leaves no room for doubt that the price paid to individual shareholders of plaintiff for their stock was paid on account of the valuable ganister rock owned by plaintiff, and not on account of plant facilities. If, therefore, it be held that the purchase of plaintiff's entire stock by the General Refractories Company from the stockholders of plaintiff in the manner stated, and the subsequent taking over of the assets of plaintiff by the General Refractories Company under a bill of sale, constituted a sale by plaintiff of its assets, as the defendant contends, there is no way in which the sales price of the specific facilities sought to be amortized can be determined.

In the absence of an affirmative showing that plaintiff sold its wartime facilities and recaptured in whole or in part their costs, it is entitled to the reasonable amortization deduction provided by the statute. The cost of the wartime equipment and facilities involved, less depreciation sustained and allowed to December 31, 1918, was $452,675.70. In its income tax return for that year it claimed and took a deduction from income of $128,566.22 on account of amortization of war facilities, which was considerably less than the amortization deduction plaintiff was entitled to on the basis of comparison of the war and post-war production of the plant. The Commissioner disallowed the deduction of $128,566.22 in its entirety and made an additional assessment against plaintiff of $104,516.78, which additional assessment, together with interest thereon, aggregating $117,505.50 was paid by plaintiff on August 18, 1928. The additional assessment was based entirely on the Commissioner's wrongful disallowance of the amortization deduction claimed by plaintiff in its tax return and was thus erroneously and illegally made. Plaintiff having filed timely claim for refund in respect to the additional assessment is entitled to recover and is hereby awarded judgment for $117,505.50, with interest as provided by law.