## H. L. RUST, JR., AND MILDRED A. RUST, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89171.   Promulgated October 18, 1938.

*Lawrence A. Baker*, *Esq.*, and *Henry Ravenel*, *Esq.*, for the petitioners.

*Willis R. Lansford*, *Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $450.46 in petitioner's income tax for the year 1934. The essential facts are stipulated.

H. L. Rust, Jr., hereinafter referred to as the petitioner, and two other individuals, Lawrence A. Baker and C. Griffith Warfield, on January 12, 1927, entered into a contract to purchase certain real estate situated in the District of Columbia, known as 1128–1130 Connecticut Avenue, for a total purchase price of $350,000. The purchasers agreed to pay $50,000 in cash, assume a first trust indebtedness of $160,000, and execute second trust notes for $140,000. The purchase was consummated on May 1, 1927. Each of the participants contributed at that time $13,000 in cash.

On April 27, 1927, petitioner entered into an agreement with the other individuals interested in the purchase, then including a fourth party who in the meantime had purchased an interest from one of the others, that the petitioner should take title to the property and operate it as trustee for himself and his associates. The trustee was to

manage and operate the property, collect the rents and profits, and distribute the net profits to the parties in interest.

On January 24, 1934, the petitioner wrote to the other participants that past due interest and a curtail on the second trust against the property would have to be met or the owner of the note secured thereby would institute foreclosure proceedings immediately. Two of petitioner's associates advised him that they could not meet their share of such payments.

Realizing that the property would be foreclosed, petitioner and one of his associates, Lawrence A. Baker, both of whom were liable as endorsers and guarantors on the second trust note and desired to protect themselves against probable deficiency judgments on the sale of the property at foreclosure, and both of whom were able and willing to meet their share of the interest and curtail referred to above, made an arrangement with the owner of the note secured by the second trust to bid up to a certain price for the property and permit them to take it over from him if he should be the successful bidder.

On February 19, 1934, the property was sold at foreclosure by the Union Trust Co. as trustee under the second trust and was purchased by the holder of the second trust note for $40,000 over and above the first trust. This amount was substantially less than the amount at which petitioner and Lawrence A. Baker were to be protected and to be permitted to take title to the property under the agreement referred to above. At that time the principal of the second trust amounted to $105,000 plus accrued interest of $8,207.50.

Thereafter and during 1934, petitioner and Lawrence A. Baker received from the purchaser at the foreclosure sale a deed to the property as tenants in common, for the following consideration: assumption of the first trust of $160,000; execution and delivery of a new second trust note for $104,000; and the payment of $13,000 for interest, taxes, and curtail of the first trust. The petitioner and Lawrence A. Baker owned the property throughout the remainder of the taxable year.

In his income tax return for the year 1934 petitioner did not claim any loss deduction on account of the foreclosure sale of the property in question. He included in his gross income one-half of the net rents from the property and claimed as a deduction one-half of the interest and taxes. Petitioner's net income as reported in his return was $4,974.91 which the respondent in his deficiency notice increased to $11,269.26. The adjustments made by the respondent, including the disallowance of a claimed loss of $17,100 on certain bank stock, are not in dispute except as they pertain to the real estate transactions described above.

The respondent has determined on the basis of reports submitted by an examining revenue agent on June 16, 1936, that the real estate

in question was operated by a partnership composed of H. L. Rust, Jr., the petitioner, Lawrence A. Baker, C. Griffith Warfield, and T. B. Hayward, for the period January 1 to February 19, 1934, and that for the period February 20 to December 31, 1934, it was operated by a partnership composed of the petitioner and Lawrence A. Baker. He has determined that for the period January 1 to February 19, 1934, that partnership had a net income from rents of $3,250, of which petitioner's share is $812.50. That amount has been added to petitioner's reported income. The respondent further determined that for the period February 20 to December 31, 1934, the partnership had a net loss of $810.13, one-half of which, or $405.06, is deductible by petitioner. In computing the earnings and profits of the partnership for the period January 1 to February 19, 1934, the respondent determined that the partnership sustained a capital net loss on the foreclosure sale described above of $108,013.63, but that only $2,000 of such amount is deductible because of the statutory limitation on capital loss deductions contained in section 117 (d) of the Revenue Act of 1934. That section of the statute reads in part as follows:

(d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *

The questions for our determination are whether any deductible loss was sustained by the petitioner by reason of the foreclosure sale, since petitioner retained or reacquired an interest in the property after the sale, and, if so, whether the loss was a capital loss within the meaning of section 117 (d).

In *Tompkins* v. *Commissioner* (C. C. A., 4th Cir.), 97 Fed. (2d) 396; the court held, reversing the Board's unreported decision in *Charles H. Tompkins*, Docket Nos. 85268, 85269 (memorandum opinion promulgated Sept. 2, 1937), that, where a partnership and a corporation jointly purchased certain real estate subject to a first trust which the purchasers assumed and upon default of interest and taxes the mortgagee foreclosed and the partnership repurchased the property at the foreclosure sale for an amount exactly equal to the outstanding first trust, the partnership, as well as the corporation, sustained a loss of its total investment in the property by reason of the foreclosure sale. In its opinion the court said:

The situation here presented is not that of a mortgagor who permits a sale of mortgaged property under a mortgage or deed of trust, buys it in at the mortgage sale and then attempts to take a deduction for the difference between the cost of the property and the amount realized upon the sale. In such case the sale might well be disregarded for income tax purposes, for the reason that the mortgagor continues to hold the property originally purchased and gain or loss is not realized until it is finally disposed of by him. Here there was not a continuation of the old status of the holder of the property, but the old status was closed by an identifiable event having no relation to tax avoidance and an

entirely new relationship with respect to the property was commenced. The loss on the original venture was liquidated for taxpayers in the same way as was the loss of the other party to the venture; and the purchase of the property was a new and distinct undertaking with reference to which future gain or loss should be reckoned.

The facts here are not distinguishable from those in the *Tompkins* case. The original venture, composed of the four individuals, terminated with the foreclosure sale on February 19, 1934, and a new venture with only two of the participants, the petitioner and Lawrence A. Baker, was then begun.

We hold upon authority of *Tompkins* v. *Commissioner, supra,* that the petitioner sustained a loss of his entire original investment in the real estate in question upon the foreclosure sale on February 19, 1934.

The remaining question, whether the loss was a capital loss subject to the limitations prescribed in section 117 (d) of the Revenue Act of 1934, has been decided by the Board in *Commonwealth, Inc.,* 36 B. T. A. 850, and in *Sol Greisler,* 37 B. T. A. 542. We held in those cases that where real estate is bid in by the mortgagee at the foreclosure sale for an amount not greater than the outstanding mortgage the resulting loss to the owner is not a capital loss, but is an ordinary loss deductible in full in the taxpayer's income tax return. In the instant proceeding the petitioner is entitled to the deduction on the full amount of his investment in the real estate in question at the time of the foreclosure sale.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Leech and Turner dissent for the reasons set forth in the dissenting opinion in *C. Griffith Warfield,* 38 B. T. A. 907.