IRVING NITZBERG and IDA NITZBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent SID MILLER and HELEN MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nitzberg v. Commissioner
Docket Nos. 1327-73 1360-73.
United States Tax Court
T.C. Memo 1975-228; 1975 Tax Ct. Memo LEXIS 144; 34 T.C.M. (CCH) 996; T.C.M. (RIA) 750228; July 14, 1975, Filed Stephen J. Schwartz and Charles A. Lane, for the petitioners. Edward B. Simpson, for the respondent. *145 GOFFE
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: Pursuant to Rule 161, Tax Court Rules of Practice and Procedure, both parties have requested by motion filed June 18, 1975, that this Court reconsider our prior memorandum opinion filed on May 21, 1975. The parties now agree that this case was submitted on a fully stipulated basis pursuant to Rule 122, Tax Court Rules of Practice and Procedure, with the understanding that the payments by petitioners' partnership to shills were ordinary and necessary business expenses within the meaning of section 162(a). [1] Our prior decision held that petitioners failed to show that their net payments to shills were ordinary within the meaning of section 162(a). We shall repeat only those facts necessary to our decision herein. FINDINGS OF FACT The practice of engaging shills in card room businesses similar to the club operated by petitioners' partnership was common and customary and the practice of such businesses in turning money (or money's worth in chips) over to shills to play Lo-Ball, Pan and similar games, with *146 the understanding that any net winnings of the shill on each occasion would be split equally between the club and the shill and any loss would be absorbed entirely by the club, was common and customary. OPINION Respondent seeks to characterize the net shill loss payments as wagering losses subject to the limitations of section 165(d). [2] Assuming such payments are wagering losses, the question then arises whether section 165(d) is the sole statutory provision under which wagering losses may be deducted notwithstanding that such losses otherwise qualify as ordinary and necessary business expenses within the purview of section 162(a). Petitioners contend that the limitation of section 165(d) allowing the deduction of wagering losses only to the extent of wagering gains is not controlling because the club did not engage in wagering. Further, if the $14,358 net payments to shills is characterized as a wagering loss, petitioners argue that the seat rental charges from the shills should be recharacterized as wagering gains rendering *147 the losses fully deductible. As we stated in our prior opinion, respondent's characterization of the net payments to the shills as wagering losses is based upon the contention that "the Club, through its arrangement with the shills, was an active participant in the gaming activity." Such a position is bottomed on the assumption that the club and the shills were, for Federal income tax purposes, dealing in concert. We perceive two possible theories to sustain such a view. On the one hand, if we disregard the form of the transaction and ignore the shills as independent taxable entities such a position could be maintained. However, we find nothing in the record to warrant such a conclusion. We also reject the possibility of numerous separate joint ventures between the club and each shill with the partnership consequences which would follow. Sec. 7701 (a)(2), Internal Revenue Code; sec. 1.761-1(a)(1), Income Tax Regs. Clearly, just as in Jennings v. Commissioner,110 F.2d 945 (5th Cir. 1940), revg. a Memorandum Opinion of the Board of Tax Appeals, cert. denied 311 U.S. 704 (1940), where a partner's distributive share of partnership *148 wagering gains was reduced by his personal wagering losses, the club's distributive share of the net payments to the shills would be characterized as wagering losses were we to find joint ventures with the shills. Commissioner v. Paley,232 F.2d 915 (9th Cir. 1956), cert. denied 352 U.S. 838 (1956); Charles H. Palda,27 T.C. 445, 452 (1956), affd. and remanded 253 F.2d 302 (8th Cir. 1958), and cases cited therein. Whether the arrangement was a joint venture is a question of fact to be determined under all the circumstances in light of the intention of the parties, the language of agreement, and the acts of the parties in carrying out the understanding. Hubert M. Luna,42 T.C. 1067 (1964); Beck Chemical Equipment Corp.,27 T.C. 840 (1957); Wm. J. Lemp Brewing Co.,18 T.C. 586 (1952). The factors we listed in Hubert M. Luna,supra, at 1077-1078, assist in deciding whether a joint venture exists for tax purposes. The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the *149 parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. [Emphasis added.] The emphasized language sets forth our view of the relationship between the shills and the club. [3] Beyond the sharing of profits, we find little suggesting a joint venture. Moreover, although the shills endeavored to secure a profit from their gaming activities, we do not believe that the combination of the club and the shills was accompanied by a joint intent to secure a profit from *150 the specific venture. Tompkins v. Commissioner,97 F.2d 396, 399 (4th Cir. 1938), revg. a Memorandum Opinion of this Court, which reversal was followed in H. L. Rust, Jr.,38 B.T.A. 910 (1938); Estate of L. O. Koen,14 T.C. 1406, 1409 (1950). This conclusion is drawn from the club's instructions to the shills that they were to leave a table to make room for a patron whether the shill was winning or losing. The purpose the club had for the presence of the shills was to provide enough players for the gaming tables. Sharing of the winnings with the shills was merely the means of compensating the shills for playing at the tables. Our conclusion as to the lack of a joint venture applies with equal force to respondent's argument that the shills were agents of petitioners and, therefore, the net payments to the shills represented gambling losses. The shills were gambling on their own account, not on behalf of the club. The intent accompanying the agency relationship in wagering activities determines the character of the agent's acts. See Lawrence E. Bevers,26 T.C. 1218 (1956). *151 We find that the net payments to the shills were not wagering losses but were ordinary and necessary business expenses deductible under section 162(a). We, therefore, need not consider either respondent's or petitioners' alternative contentions which are premised upon such payments being wagering losses. Due to other concessions, Decisions will be entered under Rule 155.
Footnotes
1. All Code references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. SEC. 165. LOSSES. (d) WAGERING LOSSES.--Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
3. See also Robert W. Ewing,T.C. Memo 1958-115↩, where the amount to be paid for services was dependent on whether or not the final result was profitable.