THOMAS LUCAS, APPELLEE, v. COUNTY RECORDER OF CASS COUNTY ET AL., APPELLANTS.

FILED DECEMBER 20, 1905. No. 14,051.

1. **Evidence** examined, and *held* to warrant the decree of the trial court.

2. **A sale** is a transmutation of property or a right from one person to another, in consideration of a sum of money, as opposed to barters, exchanges and gifts.

3. **Contract for Sale.** A written contract between the owner of real estate and a real estate broker for the "sale" of property does not contemplate an exchange thereof for other property.

4. **Statute of Frauds: EXECUTED CONTRACT.** A subsequent oral contract, superseding or modifying one which the statute of frauds requires to be in writing, will be upheld, if executed.

5. **Evidence: AMOUNT OF RECOVERY.** Under the evidence, *held*, that a real estate broker has no just cause for complaint of an allowance to him of $300 as commission for services in the exchange of properties.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Affirmed.*

*O. A. Williams,* for appellants.

*Byron Clark, contra.*

ALBERT, C.

This is a suit to restrain the recording of a certain deed or its return to the defendant Allison, and that said defendant be required to deliver the same to the plaintiff. It is alleged in the petition that at the date of the deed the defendant Allison was the plaintiff's agent for the sale of certain real estate in the village of Wabash, in Cass

county, and that said defendant falsely and fraudulently, and for the purpose of obtaining plaintiff's title to said real estate, represented to the plaintiff that he had a purchaser for the property, and that if the plaintiff would sign and acknowledge the same, leaving the name of the grantee blank, said defendant would take the deed to plaintiff's wife, who at the time was in a distant county, for her to sign it, and would give her the purchase money, which would become due the plaintiff on the consummation of the sale, but that if a sale was not made the deed should be canceled and returned to the plaintiff; that the plaintiff, relying upon said representations, signed and acknowledged a deed to said property, leaving a blank space therein for the insertion of the grantee's name, and orally authorized said defendant to fill in the name of the grantee, upon payment of the purchase price to plaintiff's wife, after she had joined in the execution of the deed; that the deed was presented to the plaintiff's wife, who, not understanding the agreement, refused to sign it, and the said defendant retained the possession thereof. It is further alleged that said defendant has presented the deed to the defendant county recorder, requesting that it be placed on the records of Cass county; that said recorder threatens to return the deed to the defendant Allison, and refuses to deliver it to the plaintiff, although the same belongs to him, and should be canceled and destroyed. It is further alleged that, although no sale of the property has been made, the defendant Allison. threatens and intends, if he obtains possession of said deed, to insert the name of a grantee therein, and that, by reason of the filing of said deed and the said acts and threats of the defendant Allison, plaintiff's title to said real estate is rendered precarious and clouded.

The defendant county recorder made default. The defendant Allison's answer contains a general denial, and certain allegations touching the relation of the other defendant to the case. In addition thereto he filed a cross-petition against the plaintiff and his wife, wherein he al-

leges, in substance, that on the 29th day of April, 1903, the plaintiff and himself entered into a written contract which is as follows:

"April 29, 1903.

"Know all men by these presents, that for and in consideration of the sum of one dollar and other valuable considerations to Thomas Lucas cash in hand paid, receipt of which is hereby acknowledged, said Thomas Lucas is to give into the hands of C. J. Allison for exclusive handling as to sale for the term of eight months from date the following lands: The south half of the northeast quarter and the north half of the southeast quarter of section 17, township 26, range 6 west of the sixth P. M. This land is hereby from this date placed in the hands of C. J. Allison for sale for the eight months, as aforesaid, at the price net to Mr. Lucas of $1,600. All the proceeds of the sale of this land over $1,600 is to be C. J. Allison's commission for the sale of this land.

"In testimony of which, witness our hands the day and year first above written.        THOMAS LUCAS.
"Witness: CLYDE McGINITIE.        C. J. ALLISON."

That on or about the 25th day of October, 1903, he found a purchaser for said premises at a consideration of $3,200, and the plaintiff conveyed the same to said purchaser; that at the same time, as agent for the plaintiff, he sold certain residence property in Neligh, and a quarter section of land in Holt county, of the aggregate value of $4,700, incumbered to the amount of $1,500, the plaintiff receiving as the consideration for the several properties, including that described in said written contract, a stock of goods, and certain real estate in the village of Wabash, and that the property thus received was of the aggregate value of $6,400; that the reasonable compensation for the sale of the residence property in Neligh and the farm in Holt county is 5 per cent. on the first $1,000 of the consideration, and 2½ per cent. on the remainder aggregating $142.50, and the commission due this defendant under the

written contract above set forth is $1,600, and that the commission for his services amount in the aggregate to $1,742.50; that at the time the negotiations for the sales mentioned were in progress, and before they were closed, it was agreed between himself and the plaintiff that the commission of the defendant should be paid in kind from the real estate or merchandise which formed the consideration for the proposed transfers, and that a portion of such real estate should become his property; that, in order not to arouse the suspicions of the purchaser, the title should all be taken in the plaintiff, and the plaintiff should hold his (Allison's) share until the prospective trade was consummated; that after the negotiations were closed and the transfers made the plaintiff signed and acknowledged the deed described in his petition, but that his wife refused to sign or acknowledge the same, and that by reason of this refusal the property therein described is incumbered by her dower interest, whereby this defendant is damaged in the sum of $500. The relief prayed in the cross-petition is that plaintiff's action may be dismissed, and that the defendant's title to the premises described in the deed in question, which are a part of the consideration taken by the plaintiff in exchange for his said properties, be quieted in him as against the plaintiff and his said wife, and for certain other relief not necessary to set forth.

The wife of the plaintiff was brought in, and denied generally all the allegations of the cross-petition. The plaintiff filed an answer to the cross-petition, admitting the execution of the contract above set forth, but alleging that the property therein described, at the time of the transfer thereof, was incumbered, and that it was understood at the time of the contract that the sale was to be for cash, and that the plaintiff was to receive $1,600, free and clear of all liens and incumbrances and charges for commission. This answer to the cross-petition, in effect, denies all the other allegations of the cross-petition save such as are impliedly admitted by the closing paragraph of the answer, which is as follows: "Further replying, this

plaintiff alleges that he placed the following properties with the defendant C. J. Allison for trade or sale, to wit: 160 acres at O'Neill, of the value of $4,000; 160 acres at Neligh., Neb., of the value of $2,400; residence in Neligh of the value of $2,000. Total, $8,400. That this plaintiff received from said defendant in exchange therefor a stock of goods from McCaig & Swarts, at the price of $4,000, McCaig real estate at $2,400, incumbrances upon plaintiff's real estate deducted $1,945, and a Swarts note of $55; making a total of $8,400. That in making said trade the defendant Allison placed his own values in his own way upon plaintiff's property to McCaig & Swarts, and the values placed thereon by him did not in anywise represent the trade as between this plaintiff and defendant, and this plaintiff has always been ready and willing, and now is ready and willing, to pay to defendant Allison a reasonable and fair consideration as his commission in making said trade, based upon the actual values thereof; that the contract marked exhibit "A" and attached to defendant's cross-bill was wholly abandoned by each of the parties hereto, for the reason that it called for cash and not trade, and the only disposition that the defendant could make thereof was in trade; that the fair and reasonable consideration due the defendant is the sum of three hundred ($300) dollars, which this plaintiff has, as aforesaid stated, always been ready and willing to pay." The plaintiff paid $300 into court for the use of the defendant, on account of his services in and about the transactions referred to in the pleadings, and the court awarded the defendant that amount, but found all the other issues in favor of the plaintiff, and entered a decree accordingly. Defendant Allison appeals.

It is not quite clear from the appellant's brief (the case was submitted without oral argument) whether he complains because of the relief granted the plaintiff with respect to the deed in question, or of the amount awarded as commission for effecting or bringing about the exchange of plaintiff's property. He testified that, while

the negotiations were in progress, it was agreed between him and the plaintiff that, when the exchange was consummated, he should take his commission out of the property the plaintiff should receive in the exchange, and that after the exchange was made it was agreed that he should take the property covered by the deed for his services, and, in pursuance of that agreement, the deed was signed, acknowledged and delivered to him by the plaintiff. The plaintiff's version is that some time after the written contract was made the exchange of properties in question was decided upon, and that it was agreed between him and the appellant that the appellant should take a portion of the stock of goods in payment of his services. He further testified that after the exchange was made, and the property covered by the deed conveyed to him, the defendant undertook to sell it, and requested the plaintiff to make the deed in question in order to expedite a sale of the property when he procured a purchaser. After the examination of all the evidence, we think the trial court was fully warranted in finding for the plaintiff on this issue.

The remaining question then is whether the amount awarded the appellant as compensation for his services as plaintiff's agent in bringing about the exchange of the properties is insufficient. It will be remembered that the property described in the written contract set out in the appellant's cross-petition was a part of the property included in the trade. In making the exchange, it was put in or estimated at $3,200 in value. It was incumbered, but, as we view the case, it is not necessary to go into that. The contention of the appellant is that, as he was to receive all above $1,600 received by plaintiff for that property, and as it was put into the trade at $3,200, his compensation for bringing about an exchange of that land is $1,600; and as the court awarded him but $300 in the aggregate, the decree is erroneous. But the answer to that is that the written contract seems to have been superseded by one resting in parol. The written contract

contemplates the sale of a particular tract of land.  Subsequently, the plaintiff exchanged this tract of land and other real estate for other real estate and a stock of goods. While this exchange was effected through the efforts of the appellant, it was not authorized by the written contract. All lexicographers and law writers recognize a distinction between a sale and an exchange of property.  "A sale is a transmutation of property or of a right from one man to another, in consideration of a sum of money, as opposed to barters, exchanges and gifts."  Rapalje and Lawrence, Law Dictionary.  See *Labarce v. Klosterman,* 33 Neb. 150. The appellant's own testimony, noticed in the preceding paragraph, as well as that of the plaintiff, shows that the written contract was abandoned, at least to the extent that it contemplates a cash commission to appellant.  But the appellant insists that a contract which, like that set out in the cross-petition, is in writing, and which the statute of frauds requires to be in writing, cannot be superseded or abrogated by a subsequent parol contract.  But here a subsequent parol agreement was, in fact, made.  Instead of a sale, as contemplated by the written contract, the subsequent contract contemplated an exchange of properties.  In pursuance of the subsequent contract, the subject matter of the written contract passed beyond the control of the parties, so that performance of the written contract on either side became impossible.  Neither party can predicate any right of action thereon against the other, because neither can aver performance, or an offer to perform his part of such contract.  This, we think, spells abrogation, and in the presence of a thing actually accomplished, it is idle to argue that it cannot be done. Without undertaking to say how such subsequent contracts will be viewed under any and all circumstances, it seems perfectly safe to hold that, when fully executed, they will be upheld.  See *Bowman v. Wright,* 65 Neb. 661, 666.

What, then, is the proper measure of appellant's recovery.  The court found against him on the proposition

that he was to have a share of the realty taken by the plaintiff in the trade, and, as above intimated, we think properly. He repudiates plaintiff's statement that he was to be paid out of the merchandise, so that those propositions are out of the way. It would seem, then, that he is left to a recovery on a *quantum meruit*. It is reasonably clear from the uncontradicted evidence of the appellant himself that 5 per cent. on the first $1,000, and 2½ per cent. on the remainder of the selling price, is a reasonable commission to a real estate agent for bringing about a sale or exchange of real property. According to the appellant's own figures, the net trading value of the property received by the plaintiff in exchange for his real estate is $6,455. According to the evidence just referred to touching the percentage constituting a reasonable commission, the appellant was entitled to $186.32. The plaintiff tendered him $300 and paid that amount into court for his use, and the court awarded him that sum. He was awarded all the evidence would warrant, to say the least.

We discover no ground for a reversal of the decree of the trial court, and therefore recommend that it be affirmed.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.