# HENDERSON v. UNITED STATES.

## No. 19728.

District Court, E. D. Pennsylvania.
Feb. 15, 1938.

Horace M. Barba, of Philadelphia, Pa., and Briggs G. Simpich, of Washington, D. C., for plaintiff.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa.

MARIS, District Judge.

This is a suit against the United States under the Tucker Act, 28 U.S.C.A. § 41(20), to recover income tax alleged· to have been erroneously assessed and collected for the year 1932.· The parties filed a stipulation of facts and an amended stipulation of facts from which I make the following special findings of fact:

At various times from 1919 to 1927 the plaintiff subscribed for shares of stock in the Bankers Building & Loan Association and in the 45th & Chestnut Streets Building & Loan Association. Both associations were corporations organized under the laws of Pennsylvania. During the month of April, 1930, the 45th & Chestnut Streets Building & Loan Association was merged with the Vital Building & Loan Association.

In the case of the Bankers Association plaintiff subscribed for a total of 500 shares. She made regular monthly payments as dues or installments on these shares at the rate of $1 per month for each share subscribed, and up to December 4, 1931, she had paid in to the association the sum of $47,231 on the 500 shares. None of these shares had then matured, by reason of the dues paid in, plus the earnings applicable thereto having amounted to $200. On December 4, 1931, pursuant to authority contained in the by-laws, plaintiff filed with the Bankers Association written notice of the withdrawal of her 500 shares.

During the year 1931 the Bankers Association had been compelled to foreclose on a number of parcels of real estate up-

on which it had mortgage loans, which foreclosures were occasioned by the general financial depression of the period. The association did not have on hand sufficient cash with which to make payment to the plaintiff of the withdrawal value of her shares as provided by the by-laws, but instead transferred to her in 1932 in full settlement certain real estate having a book value of $40,758, together with $6,473 in cash, the total being $47,231, the amount which she had paid in to the association. The real estate so transferred at a book value of $40,758 had an actual fair market value of not more than $7,815, however. Plaintiff accordingly sustained a loss of $32,943 as the result of the withdrawal of her shares, which loss she claimed as a capital loss in her income tax return for the year 1932.

In the case of the 45th & Chestnut Streets Association (subsequently merged with the Vital Association), plaintiff subscribed for a total of 79 shares. She made regular monthly payments as dues or installments on these shares at the rate of $1 per month for each single share and $2 per month for each double share subscribed, and up to January 30, 1932, she had paid in to the association the sum of $6,384 on the 79 shares. None of these shares had then matured. Pursuant to authority contained in the by-laws, plaintiff on January 30, 1932, filed with the Vital Association written notice of the withdrawal of her 79 shares. During the year 1931 the Vital Association had been compelled to foreclose on a number of parcels of real estate upon which it had mortgage loans, which foreclosures were occasioned by the general financial depression of the period. The association did not have on hand sufficient cash with which to make payment to the plaintiff of the withdrawal value of her shares as provided by the by-laws, but instead transferred to her in 1932 in full settlement certain real estate which had a fair market value of not more than $3,075. Plaintiff accordingly sustained a loss of $3,309 as

the result of the withdrawal of her shares, which loss she claimed as a capital loss in her 1932 income tax return.

Plaintiff's income tax return for the year 1932 in which the losses referred to were claimed as capital losses disclosed a total tax liability of $16,458.94 which was duly assessed against her and paid in installments during the year 1933. On July 2, 1934, plaintiff filed with the collector of internal revenue a claim for the refund of $9,803.23 income tax which she alleged was overpaid by her for the year 1932. Her claim was based upon the contention that the losses resulting from her withdrawal of shares from the two associations were actually ordinary losses within the meaning of section 23 (e) (2) of the Revenue Act of 1932, 47 Stat. 180, 26 U.S.C.A. § 23(e)(2) and note, and therefore deductible from income and not capital losses within the meaning of section 101, 26 U.S.C.A. § 101 note. Her claim for refund was rejected on September 16, 1936.

Other facts which may be material appear in the stipulation of facts and amended stipulation of facts filed by the parties in this case, which stipulations are incorporated herein by reference.

### Discussion.

This case raises the question whether a loss suffered by a shareholder of a Pennsylvania building and loan association upon the withdrawal before maturity, pursuant to the right given shareholders under the laws of Pennsylvania and the by-laws of the association, of shares held more than two years, is an ordinary loss incurred in a transaction entered into for profit within the meaning of section 23 (e)(2)[1] of the Revenue Act of 1932, 47 Stat. 180, 26 U.S.C.A. § 23(e)(2) and note, or whether it is a capital loss, that is, a "loss resulting from the sale or exchange of capital assets" within the meaning of section 101(c)(2)[2] of the act, 26 U.S.C.A. § 101 note. Admittedly the shares involved were capital assets, since they

---

[1] "§ 23. *Deductions from gross income*

"In computing net income there shall be allowed as deductions: * * *

"(e) *Losses by Individuals.* Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—* * *

"(2) if incurred in any transaction en-

tered into for profit, though not connected with the trade or business."

[2] "§ 101. *Capital Net Gains and Losses.* * * *

"(c) *Definitions.* For the purposes of this title—* * *

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets."

were held by the plaintiff for more than two years. The solution of the question, therefore, turns upon whether the loss sustained by the plaintiff upon the withdrawal of her shares was a loss resulting from their "sale or exchange." In other words, did the withdrawal of the shares constitute a sale or exchange of them within the meaning of the Revenue Act.

In determining this question, the provisions of section 115 of the Revenue Act, 26 U.S.C.A. § 115 and note, must be considered. It contains the following provisions material to the present issue:

"(c) *Distributions in Liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation." Section 115(c), 26 U.S.C.A. § 115 note.

"(h) *Definition of partial liquidation.* As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." Section 115(h), 26 U.S.C.A. § 115(i) and note.

It will be seen that subdivision (c) requires that amounts distributed in partial liquidation of a corporation shall be treated as in part or "full payment in exchange for the stock," while subdivision (h) defines "amounts distributed in partial liquidation" to include a distribution by a corporation in complete cancellation or redemption of a part of its stock. In the present case the distribution made by each association to the plaintiff was made and accepted in complete cancellation or redemption of a part of its stock; namely, the shares held by the plaintiff. It necessarily follows that the payment was a distribution in partial liquidation of the association within the meaning of section 115(c), and it was, therefore, required to be treated for income tax purposes as in full payment in exchange for plaintiff's stock. The conclusion is inescapable that the loss she suffered in each case was a loss resulting from the exchange of a capital asset and was, therefore, a capital loss within the meaning of section 101 of the Revenue Act.

The plaintiff urges, however, that a different result is compelled by the opinion of the Circuit Court of Appeals for the Third Circuit in Commissioner v. Aaron Ward & Sons, 65 F.2d 758. An examination of the opinion of the court in that case, however, shows that it is authority only for the proposition that, upon the withdrawal by a shareholder of his shares from a building and loan association, the amount received in excess of the amount of dues paid in and which has been paid by the association from its earnings is a taxable dividend and not a liquidating dividend or gain upon the exchange of the shares. The court did not suggest that the amount paid by an association to its withdrawing shareholder in complete or partial return of the dues which she had paid in on her shares would not be a distribution in liquidation. Such a payment is obviously a return of the capital paid in by the shareholder, and is, therefore, a distribution in partial liquidation of the corporation as commonly understood, and not a distribution of surplus earnings. The transactions here involved, therefore, must be held to be distributions in partial liquidation without regard to the provisions of the Revenue Act which, as we have seen, compel a like conclusion.

I accordingly reach the following conclusions of law:

The payments made by the building and loan associations to the plaintiff in 1932 upon the withdrawal of her shares were distributions in partial liquidation of the associations and for income tax purposes are to be treated as in full payment in exchange for her shares.

The losses sustained by the plaintiff in 1932 in connection with the withdrawal

of her shares from the building and loan associations were capital losses within the meaning of section 101 of the Revenue Act of 1932, 26 U.S.C.A. § 101 note.

The income tax paid by the plaintiff for the year 1932 in the sum of $16,458.-94 was lawfully assessed and collected.

The plaintiff is not entitled to the refund of $9,803.23 of said amount.

I accordingly find in favor of the defendant and against the plaintiff.