LLOYD JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90323. Promulgated March 7, 1939.

*Lloyd Jones* pro se.
*Loren P. Oakes, Esq.,* for the respondent.

OPINION.

HILL: Respondent determined a deficiency in petitioner's income tax liability for the year 1934 in the amount of $680.42. In his return for the taxable year, petitioner deducted from gross income a capital loss resulting from foreclosure sales in the alleged amount of $16,375.20. Respondent disallowed the deduction so claimed to the extent of $14,375.20, including that amount in taxable income, and on such basis computed the deficiency in controversy. The correctness of respondent's action on this point is the only issue presented for decision.

Petitioner is an individual, residing at North East, Erie County, Pennsylvania.

In April 1926 petitioner purchased certain residential property, located at Long Beach, Long Island, New York, known as the "Long Beach property", title to which was taken in his wife's name. The purchase price of this property was $45,000. Petitioner paid $10,000 cash down; he also paid $10,000 in two annual installments of $5,000 each, and a purchase money mortgage of $25,000, signed by petitioner's wife, was given to the vendor.

In May 1926 petitioner purchased 10 lots, located in the town of Oyster Bay, Nassau County, New York, known as the "Nassau Shores property", title to which was also taken in the name of petitioner's wife. The purchase price of the property was $13,150, and petitioner's wife executed a bond and mortgage to the vendor for the sum of $5,858 of the purchase price.

Although the titles were taken in the name of petitioner's wife, petitioner furnished all money paid on the purchase price of both properties above mentioned.

Petitioner's wife died testate on May 1, 1929. Petitioner was the sole beneficiary under her will, and the executor thereof.

In 1931 petitioner executed extension agreements, and thereby assumed personal liability on the purchase money mortgages on both the Long Beach and Nassau Shores properties.

Both of the mortgages mentioned were foreclosed in 1934, and as a result of the foreclosure proceedings the properties were sold to the respective mortgagees.

In consideration of the agreement of the mortgagee not to take a deficiency judgment against him, petitioner turned over to the holder of the mortgage on the Long Beach property certain furniture that remained in the house at the time of the foreclosure proceedings.

The Long Beach property was originally purchased for the sole purpose of providing a home for petitioner's wife and their six children. Some time after the death of his wife in 1929, petitioner rented the property. It was rented during 1931, and it was for that year that petitioner first claimed deductions for depreciation and reported rentals. Petitioner reported no rental for the year 1932, and the property was not rented during 1933. Petitioner, with some of his family, spent part of the summer of 1933 there in residence. Thereafter, the property was vacant until the mortgage was foreclosed in 1934.

In computing the deficiency, respondent determined that petitioner sustained a loss of $5,000 in 1934 from the sale of the Long Beach property pursuant to the foreclosure proceeding. Such loss was computed as follows: Respondent held that this property had a value in 1931, when converted to income-producing purposes, of

$35,000, from which he deducted the unpaid mortgage of $25,000, plus depreciation allowable and allowed in 1931–1933 in the total amount of $5,000.

Respondent likewise determined that petitioner sutained a loss of $5,942 during the taxable year from the sale of the Nassau Shores property under the foreclosure proceedings. The amount of loss claimed by petitioner on this property is the same as computed by respondent, except that petitioner did not deduct from the purchase price of $13,150, in addition to the unpaid mortgage of $5,858, the amount of $1,350 representing depreciation allowed (which was in excess of the amount allowable) for 1932. The method used by respondent in computing the amount of this loss must be approved, since the depreciation allowed was properly deducted under the provisions of section 113 (b) (1) (B) of the Revenue Act of 1934.[1]

Thus, respondent determined that petitioner sustained an aggregate loss on the two properties referred to in the amount of $10,942, but since petitioner had held the properties "for more than 2 years but not for more than 5 years", only 60 percent or $6,565.20 of such loss could be taken into account in computing net income, pursuant to the provisions of section 117 (a).[2] However, since petitioner reported no capital gains for the taxable year, respondent held that the amount of the allowable deduction for capital losses was further limited to $2,000 by the provisions of subsection (d) of section 117.[3] Respondent now contends that petitioner is not entitled to any deduction for loss on account of the Long Beach property for the reason that (1) such property was not being used for income-producing purposes at the time of the foreclosure sale, and (in the alternative) (2) that by the time this property had been appropriated to income-producing purposes its value had so decreased that petitioner's equity therein was worthless, and accordingly no loss was sustained from the foreclosure sale. Respondent further contends that, in any event,

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

\*       \*       \*       \*       \*       \*       \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\*       \*       \*       \*       \*       \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. \* \* \*

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\*       \*       \*       \*       \*       \*

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years; \* \* \*

[3] (d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. \* \* \*

a loss from foreclosure is a capital loss, and that petitioner's total capital losses allowable are limited to $2,000 under section 117 (d), *supra*.

Petitioner argues that he sustained total deductible losses of about $23,792.

In our opinion petitioner is not entitled to a deduction of the loss sustained from the foreclosure sale of the Long Beach property, if in fact a loss resulted therefrom, and hence we need not determine the value of the property or other factor which would enter into the computation of such loss. It is not essential to the allowance of a loss deduction that the property be purchased or constructed by the taxpayer in the first instance for the purpose of subsequent sale for a pecuniary profit. Even though the property were originally purchased for use as a personal residence, if it is thereafter abandoned for such purpose and devoted to business uses in the production of taxable income *until sold*, a loss from the sale is properly allowable. *Heiner* v. *Tindle*, 276 U. S. 582. But if a taxpayer (1) purchases or constructs a property for use as a personal or family residence and so uses it, (2) then abandons it for such use and rents it, (3) then reoccupies it as a residence for a time, and thereafter it remains vacant until sold at a loss, such loss is not a business loss and is not deductible is computing taxable income. *W. H. Moses*, 21 B. T. A. 226, 228. The use of property to produce revenue constitutes a transaction entered into for profit, but unless there is some appropriation of the property to rental purposes, *which continues until it is sold*, it retains its character as a residence rather than as a business property from the date it is last used as a residence. Cf. *Joseph F. Cullman, Jr.*, 16 B. T. A. 991. See also *Frances G. Smith*, 23 B. T. A. 1134; *D. A. Belden*, 30 B. T. A. 601; *R. C. Bayliss*, 35 B. T. A. 1128; *Howard Oots*, 37 B. T. A. 571.

A more difficult question is presented in determining whether petitioner is entitled to deduct the full amount of the loss, or only a portion of the loss, admittedly sustained by him from the foreclosure sale of the Nassau Shores property. Section 117 (d), *supra*, plainly limits the allowance of capital losses only where such losses result from "sales or exchanges." The loss involved in this case was a capital loss. The question, then, is whether or not such loss resulted from a "sale or exchange"; and the answer to this question depends upon whether or not a transfer pursuant to a proceeding for the foreclosure of a mortgage lien constitutes a "sale or exchange" by the mortgagor within the meaning of the statute.

In *Commonwealth, Inc.*, 36 B. T. A. 850, the owner of realty subject to a mortgage, but on which personal liability was not assumed, deeded the property to the mortgagee without consideration and thereby sustained a loss, which we held was deductible in full and

not subject to limitation under section 117 (d) of the Revenue Act of 1934.

In *Sol Greisler*, 37 B. T. A. 542, petitioners purchased property in 1927 subject to a first mortgage, which they did not assume. In 1934 the property was sold under foreclosure proceedings for less than the amount of the mortgage and petitioners received nothing by virtue of the sale. The loss sustained we held to be deductible in full and not subject to limitation under section 117 (d), *supra*, following the *Commonwealth* decision. In our opinion, we said:

> In the instant case, just as in the *Commonwealth* case, the petitioners received nothing in exchange for their property, not even an acquittance of a liability under the first mortgage, because, as in the *Commonwealth* case, petitioners had purchased the property subject to the first mortgage and had not assumed any personal liability thereon. Petitioners neither sold nor exchanged anything. They lost their property through the operation of the law of foreclosure. The sale by the sheriff effected a transfer of title to the property, but it did not constitute a sale or exchange by petitioners.

In *Betty Rogers*, 37 B. T. A. 897, decedent and his wife purchased property for which they paid cash in part, assumed a note secured by a mortgage on the property, and executed a second note secured by deed of trust on the same property. The first note was paid, but the second note was not paid when it became due in 1932. In 1933, pursuant to an agreement of the parties, the property was conveyed to the holder of the second note and the note was surrendered and canceled. We held that the voluntary conveyance of the property by the mortgagors in consideration of the cancellation of the debt constituted a "sale" within the meaning of section 101 of the Revenue Act of 1932 and the loss sustained was a capital loss.

*Harry Payne Bingham*, 38 B. T. A. 913, involved a taxpayer-mortgagee instead of a mortgagor, as in the other cases cited. In that case the petitioner, who had sold real estate for cash and promissory notes secured by a mortgage, reacquired the property by means of a voluntary settlement, and thereby sustained a loss. The mortgagee released the mortgage and canceled and surrendered the notes. Following *Betty Rogers*, *supra*, we held the loss was a capital loss under section 101 of the 1932 Act.

The *Rogers* and *Bingham* decisions were predicated upon the conclusion that where, by mutual agreement of the parties, the mortgagor conveys the property to the mortgagee in consideration of the release of the mortgagor from personal liability for payment of the debt secured by the mortgage, the creditor or mortgagee thereby relinquishing his right to collect such debt, the transaction constitutes either a sale of the mortgagor's right, title, and interest in the property for the price of his obligation, or is an exchange of the real estate for the obligation, both properties having an equal value.

In the *Commonwealth* and *Greisler*, cases, *supra*, it was held that the transactions did not constitute either sales or exchanges for the reason that, there being no personal liability on the part of the owners to pay the mortgage debts, there was no consideration for the transfers. In the *Commonwealth* case there was a voluntary conveyance of the property to the mortgagee, while in the *Greisler* case the property was sold at sheriff's sale, without equity of redemption.

The instant proceeding, while similar in some respects to each of the cited decisions, we think is not ruled by either of them. Here, the petitioner was personally liable for the mortgage debt, but the property was transferred to the mortgagee under a foreclosure sale. Thus, petitioner was not acquitted of his personal liability by reason of a mutual agreement of the parties, and there was no voluntary conveyance by petitioner. As we said in the *Greisler* case, *supra*, petitioner received nothing in exchange for his property; he neither sold nor exchanged anything. He lost his property through the operation of the law of foreclosure. The sale pursuant to the foreclosure proceedings effected a transfer of the title to the property, but did not constitute a sale or exchange by petitioner.

In order to constitute a "sale" there must be a purchaser as well as a seller, and there must be a meeting of the minds on a sale as between the seller and buyer. *Matteis* v. *United States*, 57 Fed. (2d) 999, 1001. In addition to the assent of the parties that the transaction shall be a sale, there must be a price or consideration moving from the purchaser to the seller for the transfer. *Borland* v. *Nevada Bank of San Francisco* (Cal.), 33 Pac. 737. Neither of those factors is present in the case at bar. Petitioner received no price or consideration, and did not convey the property or assent to its transfer. Petitioner did not "sell" his right, title, and interest in the property for the price of his obligation, nor did he exchange his real estate for the obligation. The debt was merely paid, or his obligation extinguished, to the extent of the proceeds of the forced sale. Neither full nor partial payment of a debt constitutes a "sale or exchange." *James R. Stewart*, 39 B. T. A. 87; *Charles T. Carlson*, 39 B. T. A. 185; *Hale* v. *Helvering*, 85 Fed. (2d) 819, affirming 32 B. T. A. 356.

We hold, therefore, that the transaction in controversy was not a "sale or exchange", and that allowance of the loss sustained by petitioner from the foreclosure sale of the Nassau Shores property is not limited by the provisions of section 117 (a) or (d), *supra*. The deficiency will be redetermined by allowing such loss in the full amount of $5,942, as computed by respondent. *C. Griffith Warfield*, 38 B. T. A. 907.

*Decision will be entered under Rule 50.*