MORRIS POLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, REVENUE, RESPONDENT.

Docket No. 87460. Promulgated May 23, 1939.

*George E. H. Goodner, Esq.*, for the petitioner.
*Rollin H. Transue, Esq.*, for the respondent.

OPINION.

SMITH: In this proceeding the petitioner contends that the tenants in common sustained a loss in 1934 from the operation of the garage property of $8,066.64 and that petitioner is entitled to deduct from his gross income one-fourth of that amount, or $2,016.66. He further contends that he is entitled to deduct from gross income the full amount of his share of the loss upon the surrender of the property, which is admitted to be $38,440.21.

The respondent, on the other hand, contends that the tenants in common, making their returns upon a cash receipts and disbursements basis for 1934, had a profit from the operation of the garage property

of $4,933.36, one-fourth of which, or $1,233.34, is includable in the petitioner's gross income. He further contends that the tenants in common are not entitled to the benefit of any deduction whatever for the payment of the $13,000 to the Philadelphia Saving Fund Society in 1934, nor entitled to the deduction from gross income of any part of their capital investment in the garage property, upon the ground that the loss was not sustained in 1934.

We shall first consider the question as to whether the claimed loss upon the abandonment and surrender of the garage property in 1934 fell within the year 1934 or, as claimed by the respondent, in 1935. It is alleged in the petition and admitted in the answer that "Petitioner's loss upon abandonment and surrender of the property" was $38,440.21. (This computation does not take into account any part of the $13,000 paid by the tenants in common to the Philadelphia Saving Fund Society.) How then can the respondent argue that the loss did not fall within the year 1934 when it is clear that the abandonment and surrender of the property, which he admits occasioned the loss, occurred within that year?

Entirely aside from the pleadings in this case, however, the Board is satisfied that the loss fell within the year 1934. Pursuant to the agreement of April 23, 1934, the tenants in common of the property surrendered possession thereof and all beneficial interest therein on or before May 1, 1934. The bondholder, the Philadelphia Saving Fund Society, agreed to foreclose the property at its own expense and in its own good time. The plain intent of the agreement is that the tenants in common were to divest themselves of all interest in the property on or before May 1, 1934. They did this. All that they could hope to receive on and after May 1, 1934, was the cancellation of the bond. The loss was sustained by the tenants in common when they divested themselves of all their interest in the property and not when the foreclosure sale took place.

The next question for consideration is the determination of the amount of the deductible loss. Independently of the admitted loss of $38,440.21 the petitioner contends that the tenants in common sustained a loss in 1934 of $8,066.64, computed as follows:

| | | | |
|---|---|---|---|
| *Gross income* (rents) | | | $6, 610. 86 |
| *Deductions:* | | | |
| Paid the Philadelphia Saving Fund Society | $13, 000. 00 | | |
| Expenses | 669. 97 | | |
| Depreciation | 1, 007. 53 | | |
| | | | 14, 677. 50 |
| Loss | | | 8, 066. 64 |

The petitioner contends that one-fourth of this amount, or $2,016.66, constitutes an operating loss deductible from his gross income.

The respondent computes the results of operation as follows:

Gross income (rents) _____ $6,610.86
Deductions:
    Expenses paid_____ $669.97
    Depreciation_____ 1,007.53
                                                        ——————— 1,677.50

    Gain_____ 4,933.36

The petitioner's share of the gain is computed to be $1,233.34, which the respondent contends should be included in his gross income. The respondent does not concede that the $13,000 paid the Philadelphia Saving Fund Society pursuant to the agreement of April 23, 1934, is a deductible item.

We do not think it necessary to pass upon the question as to whether the $13,000 was an ordinary and necessary expense of operating the garage in 1934. Clearly these funds were assets of the tenants in common and were paid by them to the Philadelphia Saving Fund Society pursuant to the agreement of April 23, 1934. The entire transaction relating to the garage property was a transaction entered into for profit. Therefore, if the respondent's contention that the petitioner is required to include in his gross income $1,233.34 from the operation of the garage is correct, he likewise is entitled to deduct from his gross income as a loss one-fourth of the $13,000 paid under the agreement of April 23, 1934, or $3,250. Whether the $13,000 be regarded as an ordinary and necessary expense of the operation of the garage under the principle of *Kornhauser* v. *United States*, 276 U. S. 145, or as a loss, the result is the same. In either event, the deduction, exclusive of the admitted loss of $38,440.21, is $2,016.66.

This brings us to the final question as to whether the petitioner is entitled to deduct from gross income the full amount of the admitted loss of $38,440.21 upon his investment in the garage property or whether his deduction is limited, under the capital net loss provisions of the statute, to only $2,000 of that amount.

Section 23 (e) of the Revenue Act of 1934 provides that in computing net income individuals may deduct losses incurred during the taxable year. Subdivision (j) of the same section provides that losses from "sales or exchanges" of capital assets shall be allowed only to the extent provided in section 117 (d). That section provides in material part as follows: "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges."

There can be no question that the petitioner's investment of $38,440.21 in the mortgaged property was a capital asset within the meaning of the taxing statute. He had held his interest in the property for more than two years. The petitioner contends, however, that

he did not "sell or exchange" his interest in the capital asset. We think that he did.

Many of the decisions of the Board and the courts bearing upon this point have been reviewed in *James R. Stewart*, 39 B. T. A. 87. In our opinion therein we said:

Had the purchaser surrendered his interest in the land or reconveyed it to the vendor in exchange for a cancellation of the debt, the transaction would have been regarded as a sale or exchange of capital assets. *Betty Rogers*, 37 B. T. A. 897; *Harry Payne Bingham*, 38 B. T. A. 913. * * *

Cf. *White* v. *United States*, 305 U. S. 281, and *Helvering* v. *Chester N. Weaver Co.*, 305 U. S. 293.

There may be some question as to whether the transaction between the tenants in common and the Philadelphia Saving Fund Society under the agreement of April 23, 1934, was a "sale" within the meaning of the statute. See *Commissioner* v. *Freihofer* (C. C. A., 3d Cir.), 102 Fed. (2d) 787, affirming 37 B. T. A. 542. We are nevertheless of the opinion that the transaction constituted an exchange within the purview of the above cited cases. The tenants in common relinquished their rights in the garage property in return for specific benefits which were to accrue to them. In our opinion the limitation upon the deduction of capital losses contained in section 117 (d) of the Revenue Act of 1934 applies.

In the determination of the deficiency the respondent allowed the petitioner a deduction of only one-fourth of the total loss of $2,000 upon the ground that the petitioner was a member of a partnership.

The evidence clearly shows, however, that the petitioner and his associates were not partners but were tenants in common of the garage property. The deduction of capital net losses is available to every taxpayer, other than a corporation, subject to the statutory limitations. (See sec. 117, Revenue Act of 1934.) The maximum deduction of $2,000 on the loss from the sale or exchange of capital assets is available to every taxpayer in his individual income tax return. The petitioner here is entitled to the deduction of the full amount of $2,000 of his capital loss.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

Mellott, dissenting: The conclusion of the majority that the petitioner exchanged a capital asset and thereby sustained a capital loss seems to me to be erroneous.

The agreement set out in the majority opinion indicates that the owners of the property gave up (1) $13,000; (2) their cause of action against the mortgagee; (3) possession of the property; and (4) caused their tenants to release their cause of action against the mortgagee.

They received (1) a release from liability for delinquent taxes; (2) a release from liability for all interest due on the bond which they had executed; and (3) conditional cancellation of the bond without personal liability for the payment of the principal.

The majority hold that a loss occurred in the year 1934. If this conclusion is correct, then I think it is an ordinary loss rather than one from a sale or exchange of a capital asset. It was sustained when the owners ascertained that the property not only was not worth the amount of the mortgage indebtedness but actually constituted a liability to them. Cf. *DeLoss* v. *Blair*, 28 Fed. (2d) 803; certiorari denied, 279 U. S. 840; *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

The capital asset was the real property; but it was neither sold nor exchanged. The foreclosure proceeding cut off and extinguished the equity of redemption of the owners; but this did not occur until 1935. If the loss had been claimed in that year it would probably be allowable as an ordinary loss under the rationale of *Commissioner* v. *Freihofer*, 102 Fed. (2d) 787, affirming *Sol Greisler*, 37 B. T. A. 542; and *C. Griffith Warfield*, 38 B. T. A. 907. That question, however, is not before us.

I am of the opinion that the Commissioner correctly computed petitioner's gain from the operation of the garage to be $1,233.34. The $13,000 paid to the mortgagee, however, was not an ordinary and necessary expense of carrying on a trade or business. It was paid as part of the consideration for canceling the bond. It, therefore, merely increased the owners' loss on the property.

BLACK and DISNEY agree with this dissent.