C. L. GRANSDEN & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90134.   Promulgated May 24, 1939.

*Ward H. Peck, Esq.*, and *William C. Rowland, C. P. A.*, for the petitioner.

*Edward C. Adams, Esq.*, for the respondent.

#### OPINION.

TURNER: This proceeding involves deficiencies in income and excess profits taxes for the calendar year 1934 in the respective amounts of $1,552.40 and $563.42.   The only question presented is whether certain losses sustained by the petitioner resulting from the surrender of its vendee's interests in two contracts to purchase real property, in consideration of the vendor's cancellation of its debts under the contracts, constituted ordinary losses or capital losses.

The facts have been stipulated and as stipulated are adopted as our findings herein.   Only those facts necessary to an understanding of the discussion of the issues are set forth.

The petitioner is a Michigan corporation, with its princpal office at 1214 Eighteenth Street, Detroit, Michigan.

### Detroit Tract.

On November 18, 1924, William B. Thompson, as vendor, and Henry Klotz, as vendee, entered into a contract for the sale of land and buildings situated in the city of Detroit, Michigan.   The contract recited a down payment in the sum of $400, and the vendee agreed to pay the balance of $8,350 in monthly installments of $75 each.   The vendee agreed to keep the buildings insured for the benefit of the vendor and to pay all taxes and assessments against the premises.   It was mutually agreed that if the vendee failed to pay such tax assessments and insurance premiums, the vendor might pay same and any sums so paid

would be a further lien on the land payable by the vendee to the vendor, and if proceedings were taken to enforce the contract in equity, after default by the vendee, the entire amount owing thereon would be due and payable forthwith.

The contract provided that no assignment or conveyance by the vendee would create any liability on the vendor until a duplicate thereof was delivered to the vendor; further that the vendee should have possession of the premises after the execution of the contract and while not in default on his part in carrying out the terms thereof, and if the vendee failed to perform the contract or any part thereof the vendor, immediately after such default, had the right to declare the contract void and retain whatever might have been paid thereon and be entitled to immediate possession of the premises. The contract also provided that "The covenants shall bind the heirs, assigns. and successors of the respective parties."

On February 11, 1926, Henry Klotz and his wife, Christiana Klotz, as vendors, and petitioner, as vendee, entered into a land contract wherein the former agreed to sell to the latter the property referred to in the above contract of November 18, 1924. This contract recited a down payment of $1,000, and the vendee agreed to pay the balance of $11,000 in monthly installments of $75 each.

On October 29, 1926, the principal balance remaining unpaid under the contract of February 11, 1926, having been reduced by monthly payments to an amount equal to the balance remaining unpaid under the contract of November 18, 1924, Henry Klotz and his wife executed and delivered to petitioner an assignment of the last mentioned contract. This assignment recited a balance owing upon said contract in the amount of $6,107.03, "which the said assignee and grantee assumes and agrees to pay." Thereafter petitioner made the monthly payments thereon to the vendor, William B. Thompson, the last payment being made in December 1932.

On December 15, 1934, petitioner, being in default, delivered to Thompson the two land contracts above referred to and also a quitclaim deed running from Henry Klotz and his wife to petitioner. On that date Thompson executed an instrument acknowledging receipt of the contracts and quitclaim deed, and also the sum of $250 paid by petitioner, in consideration of which Thompson released petitioner from any claim of any nature regarding the sale of the property.

Depreciation allowed or allowable on the property from the date of purchase to December 31, 1933, amounts to $1,225, and from January 1 to December 31, 1934, amounts to $143.75.

As a result of the foregoing transactions petitioner sustained a loss in the sum of $7,411.51, computed as follows:

| | |
|---|---|
| Cash principal payments on purchase | $8, 530. 26 |
| Cash payment | 250. 00 |
| | 8, 780. 26 |
| Less depreciation | 1, 368. 75 |
| Loss | 7, 411. 51 |

In its income tax return for the year 1934 petitioner deducted as an ordinary loss on account of the foregoing transactions the sum of $7,130.26.

### Flint Tract.

On September 17, 1929, Marcia Webb Dort et al., as vendors, and the petitioner herein, as vendee, entered into a land contract wherein the former agreed to sell to the latter a lot and building situated in the city of Flint, Genesee County, Michigan. The consideration recited was $28,000, payable $2,800 upon execution of the contract and the balance in monthly installments of $250 each, including interest at 6 percent.

Prior to January 24, 1934, petitioner made cash payments on the principal of the purchase price in the aggregate amount of $5,808.91, and also disbursed in cash the amount of $5,770.93 for additions and betterments to the property.

On January 24, 1934, petitioner, being in default, entered into a written agreement with the vendors whereby he surrendered and assigned all his right, title, and interest in the contract and the property described therein, and the vendors released him from any further liability under the contract. In further consideration of that release petitioner agreed to pay an amount equal to all taxes due and accrued on the property. There is nothing in the record however to indicate that the said taxes were so paid by petitioner. The agreement also provided that petitioner would have the right to remain in possession of the property as a tenant.

Depreciation allowed or allowable on the property from the date of purchase to December 31, 1933, amounts to $4,400, and from January 1 to January 24, 1934, amounts to $58.06.

Prior to 1934 petitioner accrued on its books interest on the property in the amount of $710 and taxes in the amount of $631.74, and deducted such amounts so accrued from income in its income tax returns. These accruals were never paid and were canceled upon the execution of the release above referred to.

As a result of the transactions above described petitioner sustained a loss in the amount of $5,780.04, computed as follows:

| | |
|---|---|
| Cash principal payments on purchase | $5, 808. 91 |
| Cash payments on additions and betterments | 5, 770. 93 |
| | 11, 579. 84 |

Less:

| | | |
|---|---|---|
| Depreciation | $4, 458. 06 | |
| Accrued interest | 710. 00 | |
| Accrued taxes | 631. 74 | |
| | | $5, 799. 80 |

Loss _____ 5, 780. 04

In its income tax return for 1934 petitioner deducted as an ordinary loss on account of the foregoing transactions the sum of $6,138.10.

The respondent has determined that the losses sustained by the petitioner in the two land contracts heretofore described constituted capital losses and has reduced the deduction to the sum of $2,000.

The respondent contends that petitioner's surrender of its vendee's interests in the two land contracts in consideration of the vendors' cancellation of its debts thereunder constituted sales or exchanges of capital assets within the meaning of section 117 of the Revenue Act of 1934, and that the losses sustained by petitioner were capital losses. Petitioner contends that there was no sale or exchange of a capital asset, but that "petitioner merely relinquished its right to require a conveyance from the vendor, and the latter relinquished his right to require further payments by the petitioner upon the purchase price."

We think the question here presented has already been decided by us in *Betty Rogers*, 37 B. T. A. 897; affd., 103 Fed. (2d) 790, and recently followed in *Harold R. Smith*, 39 B. T. A. 892. In the latter case we held that, where a taxpayer entered into contracts to purchase real property on the installment basis and after making certain payments thereon he surrendered his vendee's interest in the contracts and the property to the vendor in consideration of the vendor's cancellation of his debts under the contracts, the transactions constituted sales or exchanges of capital assets and the losses sustained by the vendee of his investment in the properties were capital losses. On that point the instant case is indistinguishable and the limitation prescribed by section 117 (d) of the Revenue Act of 1934 is applicable. In addition, however, to the loss of its investment in the Detroit tract, the petitioner sustained a further loss of $250, being an amount paid to the vendor in cash. The facts show that this payment was not a part of petitioner's investment in the said real estate, but, together with its interest in the real estate, constituted the consideration for release from further liability under the contract. It was a money payment as partial consideration for a release from a money liability and with respect to such payment in money we are unable to spell out a sale or exchange. To the extent of $250 the loss should be allowed as an ordinary loss.

*Decision will be entered under Rule 50.*