HELVERING, Com'r of Internal Revenue, v.
NEBRASKA BRIDGE SUPPLY &
LUMBER CO.

No. 11735.

Circuit Court of Appeals, Eighth Circuit.

Nov. 20, 1940.

John J. Pringle, Jr., Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Michael H. Cardozo, IV, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Clarence T. Spier, of Omaha, Neb., for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The petitioner challenges a determination of the Board of Tax Appeals (40 B.T.A. 40) that respondent, a taxpayer, was entitled to a deduction under § 23(f) of the Revenue Act of 1934 (48 Stat. 688, 26 U.S.C.A. Int.Rev.Acts, page 672) for losses sustained during the taxable year and not compensated for by insurance or otherwise, occasioned by the forfeiture of two tracts of land to the State of Arkansas for nonpayment of taxes.

The contention of the petitioner is that the losses sustained were from sales or exchanges of capital assets, and that therefore the amount of the deduction was limited by § 117(d) of the Revenue Act of 1934, 48 Stat. 714, 26 U.S.C.A. Int.Rev. Acts, page 708, which provides that "losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges." The petitioner also contends that as to one of the tracts the loss was

not sustained by the taxpayer in the year 1934.

The facts are not in dispute. The taxpayer, a corporation, manufactures and sells timber products. In connection with its business, it acquired the two tracts of land in question, one of which lies in Lee County, Arkansas, and the other in Monroe County, Arkansas. These lands were in the taxpayer's possession in 1932, but the taxes upon them were delinquent. On June 13, 1932, the lands were bid in by the State, at a regular tax sale, for the amount of the delinquent taxes. The time for redemption was two years, § 10096, Digest of the Statutes of Arkansas, Crawford and Moses 1921. The taxpayer in 1934 determined not to redeem these lands. The County Clerk of Monroe County in 1934 issued to the State a "certificate of sale" of the tract of land lying in that county, and this admittedly had the effect of cutting off any possible right of the taxpayer to redeem this tract of land. The County Clerk of Lee County failed during 1934 to issue such a certificate and did not issue it until April 18, 1935. The Commissioner, in auditing the returns of the taxpayer, determined that as to the tract in Monroe County there was a sale in 1934, from which a loss was sustained, but that the loss, which amounted to $10,983.73, was limited by § 117(d) of the Revenue Act of 1934 to $2,000; and that as to the Lee County tract the taxpayer sustained no loss in 1934, because it might have redeemed this tract at any time before April 18, 1935. This determination of the Commissioner created a substantial deficiency in income and excess profits taxes of the taxpayer for the year 1934, and it appealed to the Board of Tax Appeals, which overruled the Commissioner and held that the losses as to both tracts occurred in 1934 and that they did not arise out of sales or exchanges of the lands.

Two questions are presented:

1. Did the taking of these lands by the State of Arkansas for nonpayment of taxes constitute a sale or exchange?

2. Was the loss of the Lee County lands sustained in 1934?

It is elementary that the province of construction lies in the domain of ambiguity,[1] and that the use by a legislative

---

[1] Helvering v. Northwestern Nat. Bank & Trust Co., 8 Cir., 89 F.2d 553, 556; United States v. Missouri Pacific R. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L. Ed. 322.

body of words having definite meanings creates no ambiguity, and that such words are to be taken and understood in their plain, ordinary, and popular sense.[2] "Sale is a word of precise legal import, both at law and in equity. It means at all times, a contract· between parties, to give and to pass rights of property for money,—which the buyer pays or promises to pay to the seller for the thing bought and sold." Williamson v. Berry, 8 How. 495, 544, 49 U.S. 495, 543, 12 L.Ed. 1170.[3] When used together, the words "sale or exchange" comprehend a "transmutation of property from one man to another in consideration of some price or recompense in value." 2 Blackstone Comm. 446.[4] It is safe to say that a sale is a transfer of property for a price in money or its equivalent, and that an exchange is a transfer of property for other property of value.[5] Where a transfer of property takes place without the transferor's receiving anything of value for the property transferred, the transaction is not a sale or exchange.[6]

There can be no doubt that, as used in the Revenue Act, the words "sales or exchanges" include all voluntary transfers of property made for a valuable consideration.[7] Whether these words include forced sales from which the transferor receives some financial benefit has apparently not as yet been definitely settled. Compare Commissioner v. Electro-Chemical Engraving Co., 2 Cir., 110 F.2d 614, with Commissioner v. Hammel, 6 Cir., 108 F.2d 753.[8] It is not necessary, however, to express an opinion upon that question. We think that Congress, in enacting § 117(d), was dealing with losses from transfers of property where the transferor received some equivalent for the property parted with.

It is conceded that, under the laws of Arkansas, the owner of real es-

[2] Bates Mfg. Co. v. United States, 303 U.S. 567, 572, 58 S.Ct. 694, 82 L.Ed. 1020; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L. Ed. 484; Montgomery Ward & Co. v. Snuggins, 8 Cir., 103 F.2d 458, 461; Von Weise v. Commissioner, 8 Cir., 69 F.2d 439, 441.

[3] See, also, Butler v. Thomson, 92 U.S. 412, 414, 23 L.Ed. 684; State of Iowa v. McFarland, 110 U.S. 471, 478, 4 S.Ct. 210, 28 L.Ed. 198; MacDonald v. Commissioner, 2 Cir., 76 F.2d 513, 514; Ratigan v. United States, 9 Cir., 88 F.2d 919, 921; Metropolitan Edison Co. v. Commissioner, 3 Cir., 98 F.2d 807, 810; Rogers v. Commissioner, 9 Cir., 103 F. 2d 790, 792.

[4] See, also, Felin v. Kyle, D.C., 22 ·F. Supp. 556, 558, affirmed, 3 Cir., 102 F.2d 349; Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819, 821, 822; Lucas v. Cass County Recorder, 75 Neb. 351, 106 N.W. 217, 220; Berger v. United States Steel Corp., 63 N.J.Eq. 809, 53 A. 68, 71; McDuffie v. State, 19 Ga.App. 39, 90 S.E. 740.

[5] See and compare: 55 C.J. 66, Sales §§ 30–35; 23 C.J. 188, Exchange of Property, §§ 5, 25; Norfolk & W. R. Co. v. Sims, 191 U.S. 441, 447, 24 S.Ct. 151, 48 L.Ed. 254; United States v. Hendler, 303 U.S. 564, 566, 58 S.Ct. 655, 82 L.Ed. 1018; Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83, L.Ed. 855, affirming, 9 Cir., 95 F.2d 794; Wieboldt v. Commissioner, 7 Cir., 113 F.2d 384; Bingham v. Commissioner, 2 Cir., 105 F.

2d 971; Rogers v. Commissioner, 9 Cir., 103 F.2d 790; Felin v. Kyle, 3 Cir., 102 F.2d 349; Hale v. Helvering, 66 App.D. C. 242, 85 F.2d 819; Cary v. United States, D.C., 22 F.2d 298; Chicago, G. W. R. Co. v.· Postal Tel. Cable Co., 7 Cir., 249 F. 664; Baltimore & O. R. Co. v. Western Union Tel. Co., D.C., 241 F. 162; Crocker-Wheeler Co. v. Bullock, C.C., 134 F. 241, 248; Henderson v. United States, D.C., 22 F.Supp. 206; Polin v. Commissioner, 39 B.T.A. 951; C. L. Gransden & Co. v. Commissioner, 39 B.T.A. 985.

[6] Bingham v. Commissioner, 2 Cir., 105 F.2d 971; Felin v. Kyle, 3 Cir., 102 F. 2d 349; Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819; United States v. Fairbanks, 9 Cir., 95 F.2d 794, affirmed 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855; Street v. Welch, D.C., 30 F.Supp. 394; Henderson v. United States, D.C., 22 F. Supp. 206; Herder v. Helvering, 70 App. D.C. 287, 106 F.2d 153, 160.

[7] Pender v. Commissioner, 4 Cir., 110 F.2d 477; Mitchell v. Commissioner, 2 Cir., 48 F.2d 697; Commissioner v. Freihofer, 3 Cir., 102 F.2d 787, 125 A.L.R. 761; Street v. Welch, D.C., 30 F.Supp. 394; Hill v. Commissioner, 40 B.T.A. 376; Jones v. Commissioner, 39 B.T.A. 531; Rust v. Commissioner, 38 B.T.A. 910; Warfield v. Commissioner, 38 B.T. A. 907.

[8] Certiorari has been granted by the Supreme Court in those cases. 310 U. S. 622, 60 S.Ct. 1097, 84 L.Ed. 1395; 310 U.S. 619, 60 S.Ct. 1077, 84 L.Ed. 1393.

tate is not liable for the taxes imposed thereon. The taxes are a charge against and a lien upon the land. A failure to pay them results in the eventual forfeiture of the lands to the State, unless they are purchased by others at tax sale or unless they are redeemed by the owner as provided by law. The State pays nothing for lands which it bids in for taxes. It acquires title to the lands because of the failure of the owner to pay the taxes charged against them. The owner, therefore, receives nothing for his rights in the lands as a result of the tax proceedings. The transfer of title to the State is not only involuntary, but is without any consideration moving to the transferor. If the forfeiture of the lands by the State be regarded as a means of foreclosing a tax lien, it is to be noted that the owner receives no financial benefit in return for his loss of the property. No debt of his is either paid or reduced. As the Board points out in its opinion, the proceeding merely results in an extinguishment of the owner's title.[9]

█ The second contention of the petitioner is that the taxpayer might have redeemed the tract of land in Lee County in 1935, prior to April 18, when the County Clerk issued his certificate to the State. This contention is based upon an Act passed by the General Assembly of Arkansas in 1919 (§ 10106, Digest of the Statutes of Arkansas, Crawford and Moses 1921), which provides as follows: "Any land sold to the State for the nonpayment of taxes since the year 1908 or hereafter, which sale has never been certified to the Commissioner of State Lands, Highways and Improvements may be redeemed by the person, firm or corporation holding said lands under color of title by filing with the Commissioner of State Lands, Highways and Improvements a certificate from the clerk of the county in which said lands are situated showing the sale of said land, the amount of taxes, penalty and cost due thereon, if any, and the payment thereof and make a sworn statement in writing that he is the holder of said lands as aforesaid and entitled to redeem same."

Were it not for this section, the right of the taxpayer to redeem clearly would have expired in 1934. The taxpayer contends that its right to redeem expired not later than October 1934, because the Gen-

eral Assembly of Arkansas, on April 12, 1934, passed an Act which had the effect of repealing § 10106. This Act is entitled, "An Act to Provide for the Redemption of Lands Sold to the State for the Non-Payment of Taxes, Make Disposition of the Proceeds Derived Therefrom, and for Other Purposes." Act No. 2, Acts 1934, 3d Ex.Sess., Acts of Arkansas 1935, page 1011.

Section 3 of this Act provides in part as follows: "If, for any reason whatsoever, the sale to the State has not been certified to the State Land Commissioner, redemption may be made at any time before October 1, 1934, from the county clerk as now provided by law, * * *."

Section 12 of the Act provides that the Act is cumulative as to all other laws dealing with the subject matter, and shall not be construed so as to repeal a law not in "irreconcilable conflict" with it. Section 16 of the Act provides that all laws which are in irreconcilable conflict with the Act are repealed.

The petitioner contends that the Act of April 12, 1934, is not in conflict with § 10106 and did not have the effect of repealing it.

The question of what effect, if any, the Act of April 12, 1934, had upon § 10106, is a doubtful question of Arkansas law, about which the courts of Arkansas have expressed no opinion. It is not improbable that § 10106 is still in full force and effect. However, it cannot be said that the taxpayer, after October 1, 1934, had an unclouded right of redemption. It never sought to avail itself of the provisions of § 10106, and it is at least doubtful whether it could have availed itself of that section. The Board, we think, properly appraised the situation in its opinion. It said (40 B.T.A. 40, 43): "There probably was at least a possibility that petitioner [the taxpayer] might have been permitted to redeem the Lee County lands under the general provision of law (secs. 10104 and 10106, supra) rather than being limited to making redemption prior to October 1, 1934, under the Special Act of 1934. But whether it would have been permitted to do so was primarily dependent upon the construction which the courts of the state should put upon the later legislation. In any event, petitioner [the taxpayer] would

_____

9 See and compare, Street v. Welch, D. C., 30 F.Supp. 394; and Commissioner v. Freihofer, 3 Cir., 102 F.2d 787.

have had the laboring oar of convincing the court that the Act of 1934 did not, as its wording clearly indicates, amend and modify the general rule by substituting in its stead a specific requirement that redemption must be made before October 1, 1934."

The Board, in effect, ruled that, while it could not be said with certainty that the taxpayer's right to redeem its Lee County lands expired in 1934, the loss should be allowed as one ."so reasonably certain in fact and ascertainable in amount" (Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010) as to justify its deduction in the year when it was probable that the right to redeem expired, when the taxpayer thought it had expired and determined not to redeem, and when it in effect abandoned the property. The ruling of the Board has authority to support it. Compare Denman v. Brumback, 6 Cir., 58 F.2d 128; Ashland Iron & Mining Co. v. United States, 56 F. 2d 466, 74 Ct.Cl. 172; Rhodes v. Commissioner, 6 Cir., 100 F.2d 966. We cannot say that the conclusion of the Board that the loss of the Lee County lands was sustained by the taxpayer in the year 1934 is erroneous.

The decision of the Board is affirmed.